UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MIKE CASARELLA,

                      Plaintiff,

  -against-

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, MIKE CRESNO,
individually and in his official capacity,
HECTOR BORANCO, individually and in his
official capacity, JOHN AND JANE DOES 1-10,
individually and in their official capacities and
XYZ CORP. 1-10,

                     Defendants.
-------------------------------------------------------------------X

Case No.: 16-cv-9531 (NSR)

**DECLARATION OF RUDY A. DERMESROPIAN, ESQ. IN FURTHER SUPPROT OF MOTION TO WITHDRAW AS COUNSEL AND IN REPLY TO PLAINTIFF'S OPPOSITION**

      Rudy A. Dermesropian, hereby affirms the following under penalty of perjury:

      1. I am the managing member with the Law Office of Rudy A. Dermesropian, LLC, former attorney for Plaintiff Mike Casarella ("Plaintiff" or "Mr. Casarella") and I respectfully submit this Declaration in further support of my motion to withdraw as counsel for the Plaintiff and in response to Plaintiff's opposition.

      2. Mr. Casarella first retained my office on August 19, 2015 with regard to this underlying action.

      3. On December 9, 2016, Plaintiff Casarella brought this action by filing a Summons and Complaint with the Southern District Court of New York [see Dkt. Nos. 1-6].

      4. In his opposition papers, Mr. Casarella does not allege that my office somehow engaged in any wrongdoing whatsoever in this underlying action.

      5. None of the allegations in Mr. Casarella's opposition papers even remotely pertain to this action.

6. In fact, all of Mr. Casarella's allegations with regard to the New Jersey Matter are false and pertain to a matter in which my office did not represent him.

7. In paragraph 2 of his Declaration, Mr. Casarella alleges that the relationship between us broke down in April 2017 after "a default judgment was entered against [him] in a related matter pending before the Superior Court of New Jersey (the "New Jersey Matter")" and that "[he] was represented by [me]" in that New Jersey Matter. See Declaration of Mr. Casarella, at ¶ 2.

8. That statement is false and cannot be further from the truth.

9. The New Jersey Matter was an action brought by a physician who operated on Mr. Casarella and was allegedly not paid for his services by Mr. Casarella, while the underlying action brings claims of discrimination, harassment, hostile work environment, retaliation and failure to accommodate. Therefore, this case and the New Jersey Matter are not related matters as Plaintiff falsely alleges.

10. On December 22, 2016, Mr. Casarella, who was an existing client at the time, signed a retainer agreement with my office to defend him in a case in New Jersey.

11. I have never heard of nor worked with the physician suing Mr. Casarella in New Jersey.

12. At the time the retainer agreement was signed, Mr. Casarella had not yet provided me or anyone from my office with a copy of the summons and complaint in that matter, and a conflict check did not reveal a conflict with the plaintiff in the New Jersey Matter.

13. Email communication between Mr. Casarella and me show that we did not discuss the New Jersey Matter until early 2017 since I was away for the holidays.

14. On January 3, 2017, Mr. Casarella sent me by email, for the first time, a copy of the summons and complaint in the New Jersey Matter.

15. Soon after January 3, 2017, I spoke to Mr. Casarella and his wife, and informed them, after reviewing the summons and complaint, that I have a potential conflict because one of the treating physicians (not the plaintiff in the New Jersey Matter) who treated Mr. Casarella is also a client of my firm.

16. In a recorded conversation dated April 18, 2017, Mr. Casarella and his wife confirmed that they learned of the potential conflict in or about December 2016.

17. Furthermore, in an email dated February 3, 2017, Mr. Casarella and his wife confirmed that I had referred Mr. Casarella to another attorney to represent him in the New Jersey Matter. However, Mr. Casarella stated in his February 3, 2017 email that he selected to work with another attorney who was referred to him by someone else.

18. Since my office had a conflict in the New Jersey Matter, since Mr. Casarella knew that I will not be working on the New Jersey Matter, and since he was referred to another attorney, as he admitted by email and in the recorded conversation, I did not have any communication with Mr. Casarella with regard to the New Jersey Matter.

19. In fact, my office never appeared in the New Jersey Matter and did not do any work on behalf of Mr. Casarella in that case.

20. On April 18, 2017, I learned, *for the first time*, from one of Mr. Casarella's other attorneys that a default judgment was entered against Mr. Casarella in the New Jersey Matter.

21. After learning of the default judgment, I immediately contacted Mr. Casarella on the telephone.

22. In that recorded telephone conversation with Plaintiff, he confirmed that the default judgment that was entered against him was not my responsibility, that he knew of my conflict in December 2016 and most importantly, he confirmed that I had informed him in or around December 2016 or January 2017 that I "recused" myself from the New Jersey Matter.

23. Accordingly, Plaintiff's allegations in paragraph 2 of his Declaration are blatantly false.

24. Also, by email dated April 7, 2017, immediately after reviewing and filing the First Amended Complaint in this underlying action, Mr. Casarella sent me an email praising me for the work I am doing for him and my representation of him in this action. It is therefore illogical for Plaintiff to now claim that the relationship had deteriorated in April 2017.

25. Also, after sending Mr. Casarella copies of my motion to withdraw as counsel in this case, he still wrote me an email on June 19, 2017 requesting assistance.

26. On June 8, 2017 I filed a pre-motion letter requesting a pre-motion conference regarding my withdrawal as counsel, or in the alternative leave to file a motion to withdraw as Plaintiff's counsel [see Dkt. No. 19].

27. By Order dated June 13, 2017, the Court waived the pre-motion conference requirement and granted my office leave to file a motion to withdraw as counsel [see Dkt. No. 21].

28. On June 19, 2017, I served a copy of my motion to withdraw as counsel on defendants' counsel and Mr. Casarella.

29. Mr. Casarella acknowledged receipt of my motion papers via email and requested assistance.

30. Had Mr. Casarella been truly displeased with my representation, he would not have written me emails and text messages thanking me for my services and praising my representation of him, and would not have requested assistance on June 19, 2017.

31. Notwithstanding my pending motion to withdraw as counsel, which was served on all parties, Mr. Casarella irrationally sent me a letter terminating my services on July 13, 2017. See the Declaration of Mr. Casarella at ¶ 4.

32. On June 14, 2017, almost immediately after receiving Mr. Casarella's termination letter, I wrote an email to his newly retained attorney, Alexander Sakin, copying Mr. Casarella, informing Mr. Sakin that the allegations he is having Mr. Casarella make are untrue and reminded him that he is "always under an obligation to comply with Rule 11 when submitting or signing any papers."

33. In my July 14, 2017 email, I also stated to Mr. Sakin and reminded Mr. Casarella that "Numerous emails, text messages and a voice recording confirm that what [Mr. Sakin] had Mr. Casarella write and sign are false."

34. Mr. Sakin and Plaintiff clearly ignored their obligations under Rule 11 of the Federal Rules of Civil Procedures.

35. In order to preserve the attorney-client privilege, I have not attached any documents related to my communication with Mr. Casarella and attempted to limit the scope of this Declaration to the specific points raised by Plaintiff and his new counsel. However, we stand ready to submit any and all emails, text messages or the voice recording for the Court's *in camera* review.

36. Furthermore, it should be noted that Plaintiff does not oppose my application for a retaining or charging lien.

37. As stated, Plaintiff "does not oppose the sought retaining lien, pending his payment of any outstanding fees to Mr. Dermesropian," but instead he simply "requests that the Court hold the Motion in abeyance as to the charging lien pending the conclusion of this matter." See Plaintiff's Memorandum of Law at p. 2.

38. However, my motion to withdraw as counsel did not request from the Court to place a value on my charging lien at this stage of the proceeding. Therefore, Plaintiff's argument is misplaced and moot.

39. With regard to Plaintiff's request for the Court to hold the motion in abeyance as to the charging lien pending the conclusion of this matter, we do not object this request.

40. Had Mr. Sakin contacted me proposing to hold the motion in abeyance as to the value of the charging lien pending the conclusion of the case, I would have consented to that request as I am doing right now. Instead, Mr. Sakin wrote me an email on July 12, 2017 stating, in part, that they "intend to oppose" my application for a charging lien.

41. Our consent to hold the motion in abeyance as to the value of the charging lien should not be interpreted to mean that we do not believe that an equitable and fair value should not be ultimately paid to my office, especially since significant work has been performed in this action and my firm should be entitled to an equitable right and remedy.

42. "New York Judiciary Law § 475 ("Section 475") governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448-449 (2d Cir. 1998) (citing *Markakis v. S.S. Mparmpa Christos*, 267 F.2d 926, 927 (2d Cir. 1959) (Section 475 "creates an equitable right and remedy cognizable in the federal courts"); *Brooks v. Mandel-Witte Co.*, 54 F.2d 992, 994 (2d Cir. 1932), *cert. denied Mandel-Witte Co. v. Brooks*, 286 U.S. 559, 76 L. Ed. 1292, 52 S. Ct. 641

(1932) ("federal courts sitting in a state have enforced statutes of that state creating attorney's liens whether the suit for services in which the lien was claimed was originally brought in a state court or in a federal court").

43. Moreover, the Second Circuit has "long recognized that the lien created by section 475 … is enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian News Agency*, 140 F.3d at 449 (citing *In re Chesley v. Union Carbide Corp.*, 927 F.2d 60, 67 (2d Cir. 1991); *see also In re McCrory Stores Corp.*, 19 F. Supp. 691, 693 (S.D.N.Y. 1937) ("The lien being a matter of substantive law created by a statute of New York, the bounds placed on it by authoritative decisions of the New York courts are bounds on it here.")

44. I affirm under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
       July 28, 2017

                      LAW OFFICE OF RUDY A. DERMESROPIAN, LLC

                      By: _____/s/ Rudy A. Dermesropian_____
                          Rudy A. Dermesropian (RD 8117)
                          260 Madison Avenue, 15th Floor
                          New York, NY 10016
                          (646) 586-9030