UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/18

---

MIKE CASARELLA,

                    Plaintiff,

   -against-

NEW YORK STATE DEPARTMENT OF
TRANSPORTATION, MIKE CRESNO,
individually and in his official capacity,
HECTOR BORANCO, individually and in his
official capacity, JOHN AND JANE DOES 1-10,
individual and in their official capacities, and
XYZ CORP. 1-10,

                    Defendants.

No. 16-cv-9531 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

      Plaintiff Mike Casarella brings this action pursuant to 42 U.S.C. § 1983, Title VII of the

Civil Rights Act of 1964, the Americans with Disabilities Act, New York State Human Rights

Law § 296, and New York Workers' Compensation Law § 120 against Defendants New York

State Department of Transportation, Mike Cresno individually and in his official capacity,

Hector Boranco individually and in his official capacity, John and Jane Does 1–10 individually

and in their official capacities, and XYZ Corp. 1–10. Defendants move to dismiss this action

complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for

lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## I.     BACKGROUND

      The following facts are taken from Plaintiff's First Amended Complaint filed on April 7,

2017 (the "Complaint," ECF No. 15) or matters of which the Court may take judicial notice and

are accepted as true for the purposes of this motion.

On March 18, 2015, Plaintiff, who is "of Italian origins," began working as a Highway Maintenance Worker-2 for the New York State Department of Transportation ("NYSDOT"). (Compl. ¶¶ 25, 28.) Two days into Plaintiff's employment, he was verbally abused by Defendant Cresno, who yelled at, mocked, and scorned Plaintiff. (*Id.* ¶ 32.) Defendant Cresno called Plaintiff names, including Ginny,[1] Polly Wants a Cracker, and Tri-Axle, and said abusive statements to Plaintiff, such as "you suck," "you can't drive," and "you're going to fail." NYSDOT employees witnessed this abuse, and another employee was directed to train Plaintiff instead. (*Id.* ¶ 35.)

From March 23, 2015 until about April 3, 2015, Defendants Cresno and Boranco, and other NYSDOT employees, "continued to intimidate, harass and taunt Plaintiff by openly and publically" calling Plaintiff names and repeating the abusive statements. (*Id.* ¶ 37.) Defendants' failure to act encouraged this abusive behavior by other NYSDOT employees. (*Id.* ¶ 38.) In one instance, on March 25, 2015, Plaintiff was assigned to roadside trash removal duty, but Defendants failed to send a back-up truck to protect Plaintiff "as was required." (*Id.* ¶¶ 39–43.) Later, in April, Plaintiff was assigned a truck that was "in very poor and dangerous condition" to take his Large Dumpster Truck Test. (*Id.* ¶ 44.) While shoveling with other employees on duty, on April 5, 2015, Defendant Cresno yelled at Plaintiff to "work harder tri-axle" in front of other NYSDOT employees, and Defendants Cresno and Boranco continued taunting Plaintiff throughout the day. (*Id.* ¶¶ 45–46.)

Around the second week of April, due to a dispute about Plaintiff's father's landscaping business, Defendant Cresno and other NYSDOT employees told Plaintiff they were "making [him] a pair of cement boots." (*Id.* ¶¶ 47–48.) Plaintiff complained to NYSDOT foremen,

---

[1] Defendants note that Plaintiff potentially meant "Guinea," and Plaintiff notes that this is a "racial slur[] that can be used against an Italian-American." (Def. Mot. to Dismiss p. 3 n.2); (Compl. ¶ 33.)

including Defendant Boranco, but no action was taken. (*Id.* ¶ 49.) This harassment continued until October 1, 2015. (*Id.* ¶ 51.) Defendant Cresno threatened Plaintiff on an almost daily basis, stating "We still have a pair of cement boots for you," and would make this threat or other disparaging statements, including "you parakeet," in front of Defendant Boranco. (*Id.* ¶¶ 51–52.)

In early June 2015, while performing his NYSDOT duties, Plaintiff was bitten by a tick and contracted Lyme disease, which required him to take a short time off from work. (*Id.* ¶¶ 53–56.) Defendants Boranco and other NYSDOT employees accused Plaintiff of "playing a game" and "taking a long weekend." (*Id.* ¶ 56.)

On June 29, 2015, Plaintiff submitted a written complaint to the NYSDOT Commissioner, Regional Director, and Regional Supervisor, providing specific examples of the harassment and requesting help. (*Id.* ¶ 57–61.) Plaintiff also repeatedly complained to the General Foreman. (*Id.* ¶ 59.) The NYSDOT employees "ignored Plaintiff's complaint and failed to take any remedial action." (*Id.* ¶ 62.)

On July 21, 2015, Plaintiff received a counseling memorandum stating that he was tardy to work on July 14, 15, 16, 19, and 20 of 2015, despite records showing that he had arrived to work on time. (*Id.* ¶¶ 63–64.) "The write up was obviously given to Plaintiff in retaliation for his complaints." (*Id.* ¶ 65.)

Plaintiff submitted another two complaints to the NYSDOT Commissioner, Regional Director, and Regional Supervisor on July 22, 2015 about the counseling memorandum, stating that he was being harassed for "speaking up." (*Id.* ¶¶ 66–68.) On July 30, 2015, Plaintiff sent letters to Defendants describing the various incidents of harassment, the stress the harassment caused Plaintiff and his family, and NYSDOT's "intentional and inappropriate record keeping." (*Id.* ¶¶ 69, 72, 74.) Plaintiff's complaints were not addressed. (*Id.* ¶ 70.)

Plaintiff's fiancé, on July 30, 2015, emailed NYSDOT employees about the harassment Plaintiff had experienced, and the "amount of undo stress and emotional strain this situation has put on [their] family." (*Id.* ¶ 71.)

On August 5, 2015, Defendants again sent Plaintiff, and no other employee, to remove trash from the roadside and again did not provide a back-up truck. (*Id.* ¶¶ 75–76, 79.) Plaintiff asserts that, "[a]s obviously planned by Defendants, since Plaintiff did not have a back-up truck," Plaintiff sustained permanent injuries to his foot from oncoming traffic. (*Id.* ¶ 80.)

Plaintiff sent another complaint to NYSDOT around August 5, 2015, complaining of continuous harassment and describing the roadside incident. (*Id.* ¶ 82.) Plaintiff stated that Defendant Cresno called him a "parakeet rat," that Defendant Boranco "denied [him] lunch" on August 5, 2015, and that Defendant Boranco told him "if you don't get those paper[s] (close to the road), I am taking you back to the yard." (*Id.*)

Because of the tick bite and his foot injuries, Plaintiff filed a workers' compensation claim.[2] (*Id.* ¶ 85.) "Defendants continued to harass Plaintiff and called him a liar . . . and told him to 'man-up,' " and retaliated against him for filing the claim. (*Id.*) Plaintiff's workers' compensation claim was denied, and he was terminated on October 8, 2015. (*Id.* ¶ 86.) Plaintiff states that other, non-disabled and non-Italian employees were treated better than Plaintiff and were not harassed. (*Id.* ¶¶ 88–90.)

Because of this discrimination, harassment, and retaliation, Plaintiff suffers from "mental anguish, emotional distress, loss of enjoyment of life, stress, anxiety and other monetary damages," and Plaintiff has been consulting with a mental healthcare professional. (*Id.* ¶¶ 91–92.)

---

[2] Plaintiff does not state the date on which he filed his workers' compensation claim, but, because it included his foot injury, it must have been filed between August 5 and October 8, 2015.

## II.    MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). The court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

## III.   DISCUSSION

### A.   Workers' Compensation Claims

Defendants state that Plaintiff does not have a right of action under the New York Workers' Compensation Law and that Plaintiff's claims related to this statute must be dismissed. (Def. Mot. to Dismiss p. 10.)

The Workers' Compensation Board is the "sole remedy for retaliatory discharge in violation of Workers' Compensation Law § 120." *Brook v. Overseas Media, Inc.*, 69 A.D. 3d 444 (N.Y. App. Div. 1st Dep't 2010); *see* N.Y. Workers' Comp. Law §§ 23, 120 ("An award or decision of the board shall be final and conclusive . . . . Any party may within thirty days after notice of the filing of an award or decision of a referee, file with the board an application."); *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 230–31 (E.D.N.Y. 1993) (holding that an employee had no federal cause of action for discharge in retaliation for filing a workers' compensation claim).

Accordingly, Plaintiff's claims under the New York Workers' Compensation Law are dismissed for lack of subject matter jurisdiction.

### B.   Immunity

Defendants claim that Defendant NYSDOT is entitled to Eleventh Amendment immunity from Plaintiff's Americans with Disabilities Act ("ADA") claims, and that individual Defendants Cresno and Boranco are entitled to Eleventh Amendment immunity for Plaintiff's § 1983 and

New York Human Rights Law § 296 ("NYHRL") claims against them in their official

capacities.[3] This Court agrees.

"[A]s a general rule, state governments may not be sued in federal court unless they have

waived their Eleventh Amendment immunity," or unless Congress has abrogated the states'

Eleventh Amendment immunity. *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466

F.3d 232, 236 (2d Cir. 2006). "The immunity recognized by the Eleventh Amendment extends

beyond the states themselves to state agents and state instrumentalities that are, effectively, arms

of a state." *Id.* (internal quotation marks omitted).

NYSDOT, a state agency, is immune from Plaintiff's ADA claims under Eleventh

Amendment sovereign immunity. Although Plaintiff does not specify under which title(s) of the

ADA he is suing, the Court finds that his ADA claims fall under Title I because they include

discrimination and a hostile work environment and Title V because they allege retaliation. The

Supreme Court has held that Title I is not a valid abrogation of states' Eleventh Amendment

sovereign immunity, and district courts within this Circuit have "consistently held that the

Eleventh Amendment bars retaliation claims under Title V of the [ADA]." *Bd. of Trs. Of Univ. of*

*Ala. v. Garrett*, 531 U.S. 356, 368–69 (2001); *Morales v. New York*, 22 F. Supp. 3d 256, 268

(S.D.N.Y. 2014); *see, e.g., Johnson v. N.Y.S. Dep't. of Corr. Servs.*, No. 11–CV–079(S), 2012

WL 4033485, at *3 (W.D.N.Y. Sept. 12, 2012) (noting that, if " 'a state is immune from

underlying discrimination, then it follows that the state must be immune from claims alleging

retaliation for protesting against discrimination' " (quoting *Chiesa v. N.Y. State Dep't of Labor*,

638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009)); *Davis v. Vt. State Dep't of Corr.*, 868 F. Supp. 2d

---

[3] The Court will not address Defendants' alleged immunity from Plaintiff's New York Workers' Compensation Law claims because the Court has dismissed those claims for lack of subject matter jurisdiction. (Def. Mot. to Dismiss pp. 7–9.)

313, 321–23 (D. Vt. 2012) (collecting cases); *Padilla v. N.Y. State Dep't of Labor,* No. 09-CV-5291(CM)(RLE), 2010 WL 3835182, at \*4 (S.D.N.Y. Sept. 13, 2010) (collecting cases). Because NYSDOT is a state agency and has not waived its Eleventh Amendment protection, it is immune from Plaintiff's ADA claims and those claims are dismissed.

Defendants Cresno and Boranco are protected by the same immunity for suits brought against them in their official capacities. The Eleventh Amendment protects state officials acting in their official capacities from liability under state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *Concourse Rehab. & Nursing Ctr. Inc. v. Wing*, 150 F.3d 185, 187 (2d Cir. 1998). "New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983." *Grigoli v. 42 U.S.C. § 654(3) Child Support Enf't Div.*, No. 18-CV-3672, 2018 WL 2084172, at \* 5 (S.D.N.Y. May 1, 2018); *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38 (2d Cir. 1977). Therefore, Plaintiff's § 1983 and NYHRL claims against Defendants Cresno and Boranco in their official capacities are dismissed.

## C.    Title VII and NYHRL Claims

Plaintiff alleges that NYSDOT violated Title VII of the Civil Rights Act of 1964 ("Title VII") by discriminating against him based on his national origin, fostering a hostile work environment, and retaliating against him. (Compl. ¶¶ 99–103, 134–38, 144–47.) Similarly, Plaintiff alleges that Defendants Cresno and Boranco violated the NYHRL by discriminating against him based on both his national origin and his disability and perceived disability, by fostering a hostile work environment, and by retaliating against him. (*Id.* ¶¶ 104–08, 114–18, 124–28, 139–43, 156–59.) The Second Circuit has held that "claims brought under New York

8

State's Human Rights Law are analytically identical to claims brought under Title VII." *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *see Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 n.9 (2d Cir. 2008). Accordingly, the Court will address Plaintiff's Title VII claims against NYSDOT and his NYHRL national origin discrimination, hostile work environment, and retaliation claims against Defendants Cresno and Boranco together.

### 1. **National Origin Discrimination**

A plaintiff establishes a claim for national origin discrimination by showing that "national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). To establish a prima facie discrimination claim, a plaintiff must demonstrate that he (1) is within the protected class; (2) was qualified for his employment position; (3) was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *United States v. Brennan,* 650 F.3d 65, 93 (2d Cir.2011). Plaintiffs must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Littlejohn v. New York*, 795 F.3d 297, 310 (2d Cir. 2015)) (internal quotation marks omitted). While "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, [ ] it must nevertheless comply with the plausibility standard set forth in *Twombly* and *Iqbal.*" *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 21–22 (2d Cir. 2015) (quoting *E.E.O.C. v. Port Auth. of N.Y. & N.J.,* 768 F.3d 247, 254 (2d Cir. 2014)) (internal quotation mark omitted) (citations omitted).

Defendants argue that Plaintiff has not stated a plausible claim for discrimination based on national origin because Plaintiff does not identify any facts supporting an inference that an adverse employment action was taken because of national origin discrimination. (Def. Mot. to Dismiss pp. 11–16.)

Plaintiff has sufficiently alleged he is part of a protected class and that he was qualified for his position to satisfy the motion to dismiss standard. (Compl. ¶¶ 25–29.) However, whether Plaintiff sufficiently alleged that he was subject to an adverse employment action creating the inference of discrimination requires further analysis. An adverse employment action is a " 'materially adverse change' in the terms and conditions of employment." *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). Plaintiff's termination is certainly an adverse employment action.[4] In contrast, a counseling memorandum, without unfavorable consequences, is not an adverse employment action. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011); *Staff v. Pall Corp.*, 233 F. Supp. 2d 516, 540 (S.D.N.Y. 2002) (holding that a plaintiff's employment review was not an adverse employment action because there was no "evidence demonstrating that it had unfavorable attendant consequences"). Plaintiff's Complaint contains few facts about discrimination and harassment based on his national origin to support an inference that his termination was connected to his national origin. Plaintiff states that he is "of Italian origins" and that Defendants Cresno, Boranco, and other NYSDOT employees called him "Ginny" for approximately the first two weeks of his employment. (Compl. ¶¶ 28, 32, 37.) Plaintiff was terminated approximately five

---

[4] Plaintiff does not present Defendants' repeated failure to provide a back-up truck as an adverse employment action, but Defendants pre-emptively argue that those incidents are not "discriminatory employment practices" or adverse employment actions. (Def. Mot. to Dismiss pp. 11–12.) While Plaintiff states that it is "required" practice to provide employees with back-up trucks when doing roadwork, and failure to provide Plaintiff with a back-up truck could be a materially adverse departure from procedure, Plaintiff provides no facts to support this conclusion. (Compl. ¶¶ 43, 79, 89–90 (describing "non-disabled and non-Italian" employees but failing to describe whether they were ever required to work without a back-up truck or in other unsafe conditions).)

months after he was last harassed based on his national origin. (*Id.* ¶ 86.) He identifies three[5] other NYSDOT highway maintenance workers, like Plaintiff, who are "non-disabled and non-Italian" and "were treated better and more favorably than Plaintiff" and "not taunted, ridiculed [and] called discriminatory names." (*Id.* ¶¶ 88–90.) These facts, while likely insufficient to withstand a more rigorous standard than that of a motion to dismiss, plausibly establish minimal support for the inference that the NYSDOT was motivated by discriminatory intent in terminating Plaintiff.[6] *See Nguedi v. Fed. Reserve Bank*, 16-CV-0636(GHW), 2017 WL 5991757, at *6 (S.D.N.Y. Dec. 1, 2017) (holding that the plaintiff provided "minimal support" to suggest that the defendant acted with discriminatory intent by "alleging the existence of similarly situated comparable Caucasians who were treated better than he"). Defendants' motion to dismiss Plaintiff's national origin discrimination claims under Title VII against Defendant NYSDOT and under NYHRL against Defendants Cresno and Boranco is denied.

## 2. Hostile Work Environment

To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rivera v. Rochester Genesee Reg'l Trans. Auth.*,

---

[5] Plaintiff identifies a fourth individual, but states that this individual is not a highway maintenance worker of a similar level to Plaintiff. (Compl. ¶ 90.) The Court will not consider this employee, as he is not sufficiently "similarly situated." *Infra* III(C)(1) n.6.

[6] A plaintiff may establish an inference of discrimination "by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). The plaintiff must compare herself to employees who are similarly situated in "all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). "[T]here appears to be a developing question in the Circuit regarding the degree of factual detail a plaintiff must include in a complaint regarding similarly situated comparators." *Nguedi v. Fed. Reserve Bank*, 16-CV-0636(GHW), 2017 WL 5991757, at *6 (S.D.N.Y. Dec. 1, 2017). Plaintiff's description of similarly situated individuals was arguably scant, but those descriptions, together with his allegations about Defendants' repeated use of the slur, are sufficient to provide minimal support.

743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted). This standard is both objective and subjective; "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). "[A] plaintiff need not show that her hostile working environment was both severe *and* pervasive; only that it was sufficiently severe *or* sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." *Pucino v. Verizon Commc'n, Inc.*, 618 F.3d 112, 119 (2d Cir. 2010) (emphases in original).

In determining whether a plaintiff has satisfied its burden for the sufficiency of the alleged harassment, "courts should examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance." *Rivera*, 743 F.3d at 20 (alterations in original). "Properly applied, [these standards] will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

Plaintiff was employed at NYSDOT for approximately six months and during that time, he endured insults and the use of a "racial slur" against his Italian heritage from multiple NYSDOT employees, including Defendants Cresno and Boranco. (Compl. ¶¶ 25, 32–37, 45–46, 48, 51, 52, 56, 82.) Plaintiff alleges that his supervisors and co-workers "continuous[ly] and intentional[ly]" failed to intervene, which allowed his co-workers to "continue to abuse him and harass him without fear of consequences." (*Id.* ¶ 38.) Moreover, Plaintiff claims that the second

time he was sent to work on the roadside without a back-up truck was "obviously planned by Defendants" because he "was the only one who was ordered to pick up trash off of the side of a busy road without a back-up truck protecting him from oncoming traffic." (*Id.* ¶¶ 79–80.) While the insults may not qualify as "severe," they were pervasive. Conversely, the incident with the roadwork, while isolated, was severe and resulted in a permanent injury to Plaintiff's foot. (*Id.* ¶ 81.) Plaintiff's Complaint establishes a facially plausible hostile work environment claim, and Defendants' motion to dismiss Plaintiff's Title VII hostile work environment claim against NYSDOT and Plaintiff's NYHRL claim against Defendants Cresno and Boranco is denied.

### 3. Retaliation

Plaintiff claims that the counseling memorandum and his termination were in retaliation for his written complaints to NYSDOT. (Compl. ¶¶ 63, 86.) To state a claim for retaliation, a Plaintiff must allege that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012) (citing *Kessler v. Westchester Dep't of Soc. Serv.*, 461 F.3d 199, 205–06, 207–10 (2d Cir.2006)). The governing standard is an objective one: "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

A plaintiff may establish causal connection directly, through evidence of retaliatory animus, or indirectly, by demonstrating close temporal proximity between the protected activity and the adverse action. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). The

Supreme Court has noted that when courts accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case, "the temporal proximity must be 'very close.' " *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, the Second Circuit has not established a specific delay that defeats an inference of causation. *Gorman–Bakos v. Cornell Co-op Extension*, 252 F.3d 545, 554–55 (2d Cir.2001) (listing cases in the context of Title VII retaliation).

Plaintiff states a retaliation claim. His complaints to NYSDOT were protected activity and Defendants were aware of that activity.[7] Plaintiff's termination was a materially adverse action. *Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004). The counseling memorandum, however, was not. *Cody v. County of Nassau*, 345 Fed App'x 717, 719 (2d Cir. 2009) (holding that false accusations and write-ups were not materially adverse actions); *Risco v. McHugh*, 868 F. Supp. 2d 75, 113 (S.D.N.Y. 2012) (holding that the "preparation of two counseling memoranda . . . is insufficient to establish a materially adverse action"). Finally, Plaintiff pleads sufficient facts to show a facially plausible causal connection between his complaints and his

---

[7] Defendants argue that, under *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015), Plaintiff's internal complaints to NYSDOT were not protected activity. (Def. Mot. to Dismiss p. 18.) However, that case concerned EEOC proceedings, and while the court stated that internal complaints do not qualify as protected activities under Title VII's participation clause, the internal complaints are protected activities under Title VII's opposition clause. *Littlejohn*, 795 F.3d at 316. Other courts have also consistently held that internal complaints are protected activity for a retaliation analysis. "Informal complaints to supervisors, instituting litigation, or filing a formal complaint are protected activities under Title VII." *Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) (internal quotation marks omitted); *see Hubbard v. Total Commc'n, Inc.*, 347 F. App'x 679, 681 (2d Cir. 2009) (holding that a plaintiff's email to her supervisor, although informal, was protected activity); *Rodriguez v. Beechmont Bus Serv., Inc.*, 173 F. Supp. 2d 139, 150 (2d Cir. 2001) (holding that a plaintiff engaged in protected activity by "lodging [ ] several internal complaints regarding the defendants' discriminatory conduct"); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir.1992) (holding that internal complaint to company management was protected under Title VII); *Batiste v. City Univ. of N.Y.*, No. 16-CV-3358, 2017 WL 2912525, at *10 (S.D.N.Y., 2017). Also, because Plaintiff's complaints were addressed to Defendants and because Plaintiff filed numerous complaints in a relatively short timeframe, the Court finds that they were aware that he was engaging in protected activity.

termination. Plaintiff submitted numerous written complaints to various NYSDOT employees and supervisors, his most recent on August 5, 2015. (Compl. ¶¶ 57, 66, 69, 82, 84.) Plaintiff was terminated on October 8, 2015, just over one month after that complaint, which, together with the volume of Plaintiff's complaints over an approximately four month period, is sufficient to establish facially plausible indirect causal connection. (*Id.* ¶ 86); *see Feliciano v. City of New York*, 14-CV-6751(PAE), 2015 WL 4393163, at *10 (S.D.N.Y., July 15, 2015) ("[W]here no additional facts are pled, temporal proximity ordinarily requires that the allegedly retaliatory act occur within two months of the plaintiff's protected activity.").

Therefore, Defendants' motion to dismiss Plaintiff's Title VII and NYHRL retaliation claims is denied.

### 4. Disability and perceived disability.

The NYHRL prohibits employers from discharging or otherwise discriminating against employees because of their disabilities. N.Y. Exec. Law § 296. To state a facially plausible claim under this provision, "a plaintiff must establish a prima facie case of illegal discrimination." *Lugo v. Milford Mgmt. Corp.*, 956 F. Supp. 1120, 1128 (S.D.N.Y. 1997). To establish a prima facie case, Plaintiff must show (1) that he is an individual with a disability within the meaning of the NYHRL; (2) that Defendants are subject to the NYHRL and had notice of Plaintiff's disability; (3) that Plaintiff was otherwise qualified to perform the essential functions of his position with or without reasonable accommodation; and (4) that Plaintiff was terminated because of his disability. *Fall v. N.Y. State United Teachers*, 289 F. App'x 419, 420 (2d Cir. 2008); *Schlenger v. Fid. Emp'r Serv. Co.*, 785 F. Supp. 2d 317, 354 (S.D.N.Y. 2011). "Disability" includes "a physical . . . impairment resulting from anatomical,

physiological . . . conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques " provided that the disability, with reasonable accommodations, does not prevent the employee from performing his job requirements. N.Y. Exec. Law § 292(21).

Plaintiff's alleged disabilities appear to be from Lyme disease and from his foot injury, sustained on August 5, 2015. (Compl. ¶ 85.) Plaintiff's Lyme disease does not qualify as a disability under the statute because, while Plaintiff was absent from work for a couple of days to recover, Plaintiff's Complaint includes no facts about any lasting "impairments." (*Id.* ¶ 56.) Plaintiff alleges that his foot injury was "severe and permanent" (*Id.* ¶¶ 80, 84.) However, Plaintiff presents no facts describing how this injury "prevents the exercise of a normal bodily function" or suggesting how disability in his injured foot would be "demonstrable by medically accepted clinical or laboratory diagnostic techniques." *See Putkowski v. Warwick Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 649, 654–55 (S.D.N.Y. 2005) (dismissing a plaintiff's NYHRL claim for failure to plead sufficient facts to verify the disability he suffered after his stroke). Even assuming Plaintiff stated sufficient facts to support his claim that his foot injury is a disability, Plaintiff's Complaint does not support a plausible finding that his disability was a factor in his termination. Plaintiff pleads no facts to show that his foot injury ever interfered with his job performance, that anyone at NYSDOT commented on his injury, or that the injury was ever discussed beyond Plaintiff's complaints to NYSDOT after the August 5, 2015 incident. Thus,

Plaintiff's NYHRL claims for disability and perceived disability against Defendants Cresno and Boranco are dismissed.

### D.     42 U.S.C. § 1983

Plaintiff claims that Defendants discriminated against Plaintiff and contributed to a hostile work environment in violation of § 1983. (Compl. ¶¶ 93–98, 152–55.) Defendants allege that Plaintiff failed to state a cause of action under § 1983. (Def. Mot. to Dismiss p. 23.)

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under § 1983, a plaintiff must allege "(1) the challenged conduct was attributable to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09-CV-5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *Quinn v. Nassau Cty. Police Dep't*, 53 F. Supp. 2d 347, 354 (E.D.N.Y. 1999) ("[Section 1983] furnishes a cause of action for the violation of federal rights created by the Constitution.").

Defendants state that Plaintiff fails to identify the federal rights he seeks to vindicate through his § 1983 claims and suggest that these claims are premised on a violation of his rights under the Fourteenth Amendment's Equal Protection Clause or 42 U.S.C. § 1981, which protects

equal rights under the law. 42 U.S.C. § 1981; (Def. Mot. to Dismiss p. 23.) "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause." *Patterson*, 375 F.3d at 225; *Robinson v. Concertra Health Serv., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). While this Circuit has not ruled on this issue, district courts have held that national origin is not protected by § 1981. *Wesley v. Palace Rehabilitation & Care Center, LLC*, 3 F. Supp. 3d 221, 233 (D. N.J. 2014); *Ganthier v. N. Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 281–82 (E.D.N.Y. 2004); *Chimarev v. TD Waterhouse Inv'r Serv., Inc.*, 280 F. Supp. 2d 208, 224–25 (S.D.N.Y. 2003). Accordingly, and because Plaintiff did not include § 1981 as a basis for his § 1983 claim in his Complaint, the Court finds that Plaintiff's § 1983 claim is premised solely on the Equal Protection Clause. As discussed *supra* III(C)(2), the Plaintiff pled sufficient facts to support his hostile work environment claim. Defendants' motion to dismiss Plaintiff's § 1983 claims against Defendants Cresno and Boranco is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED in part and DENIED in part. Plaintiff's ADA claims against NYSDOT and his § 1983 and NYHRL claims against Defendants Cresno and Boranco in their official capacities are dismissed for lack of subject matter jurisdiction. Plaintiff's New York Workers' Compensation Law claims against Defendants are also dismissed for lack of subject matter jurisdiction. Plaintiff's NYHRL claim for discrimination based on disability and perceived disability against Defendants Cresno and Boranco in their individual capacities is dismissed for failure to state a claim. Plaintiff's Title VII and NYHRL claims for national origin discrimination, retaliation, and hostile work environment against Defendants NYSDOT and

Defendants Cresno and Boranco in their individual capacities remain. Additionally, Plaintiff's § 1983 claim against Defendants Cresno and Boranco in their individual capacities remains.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 34. Defendants are directed to file an answer to the Complaint on or before October 12, 2018. The parties are directed to confer, complete, and submit to the Court the attached case management plan on or before October 19, 2018. This constitutes the Court's Opinion and Order.

Dated:   September 13, 2018
         White Plains, New York

                                          SO ORDERED:

                                          _____
                                          NELSON S. ROMÁN
                                          United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

------------------------------------------------------------x

                               Plaintiff(s),

    - against -

                               Defendant(s).

------------------------------------------------------------x

## CIVIL CASE DISCOVERY PLAN AND SCHEDULING ORDER

_____ CV _____ (NSR)

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.     All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.     This case [is] [is not] to be tried to a jury.

3.     Joinder of additional parties must be accomplished by
   _____.

4.     Amended pleadings may be filed until _____.

5.     Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.     First request for production of documents, if any, shall be served no later than
   _____.

7.     Non-expert depositions shall be completed by _____.

   a.     Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b.     Depositions shall proceed concurrently.

   c.     Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.     Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.     Requests to Admit, if any, shall be served no later than

       _____.

10.    Expert reports shall be served no later than _____.

11.    Rebuttal expert reports shall be served no later than _____.

12.    Expert depositions shall be completed by _____.

13.    Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.    **ALL DISCOVERY SHALL BE COMPLETED BY**

       _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated: White Plains, New York

       _____


                              _____
                              Nelson S. Román, U.S. District Judge